Jon G. Shadinger, Jr., Esq. (03623107)
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>WEST BERLIN CHICKEN, LLC,<br>a New Jersey Limited Liability Company,<br><br>Defendant. | Case No. 1:26-cv-12605<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual, ("Plaintiff") on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, WEST BERLIN CHICKEN, LLC, a New Jersey Limited Liability Company, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, WEST BERLIN CHICKEN, LLC, operates a place of public accommodation alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

3. Defendant's property/place of public accommodation – a fast-food restaurant known as Popeyes Louisiana Kitchen – is located at 188 NJ 73 North, Berlin, NJ 08091 (the "Property" or "Popeyes").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

---

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

**Factual Background**

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when improperly designed or implemented, can be arduous and even dangerous to those in wheelchairs.

11. Generally speaking, the barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

12. Furthermore, Mr. Maurer is the president of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country. In his capacity as the president and member of this group, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the Independence Project and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on geography),

in order to determine if such have been made accessible – as agreed – and continue to remain in compliance; it is his normal practice to inspect the properties under his purview twice per year. Mr. Maurer also inspects additional properties that he visits as a patron when they are incident to his inspection routes and/or along his usual travel routes.

13. A selection of properties that Mr. Maurer's regularly inspects for continuing compliance which are located in the vicinity of the Property include the following:

a. 2110 Route 70, Cherry Hill, NJ 08003; *1:15-cv-06872 (D.N.J.)*
b. 1990 Marlton Pike, Cherry Hill, NJ 08003; *1:15-cv-05510 (D.N.J.)*
c. 1011 Route 73, Marlton, NJ 08053; *1:19-cv-14612 (D.N.J.)*
d. 1155 Route 73, Mt Laurel, NJ 08054; *1:19-cv-10605 (D.N.J.)*
e. 300 E. Greentree Rd, Marlton, NJ 08053; *1:21-cv-12247 (D.N.J.)*

14. Mr. Maurer has visited the Property several times over the years and his last visit to the Property occurred on or about July 18, 2026. Mr. Maurer visited the Property as a bone fide patron with the intent to avail himself of the goods and services offered to the public within; however, he found it was rife with violations of the ADA – both in architecture and in policy.

15. Moreover, prior to the onset of his disease and his ensuing disability, Mr. Maurer was a licensed thoroughbred horse trainer and assistant horse trainer for over twenty-five years. Horseracing remains his passion; he attends workouts, trainings, sales, and live racing whenever possible – as such he regularly travels across New Jersey, Pennsylvania, and New York.

16. The horse racing venues/farms frequently traveled to by Mr. Maurer include, but are not limited to, the following:

f. Delaware Park Race Track, located at 777 Delaware Park Blvd, Wilmington, DE 19804
g. Harrah's Philadelphia Racetrack, located at 777 Harrah's Blvd, Chester, PA 19013
h. Parx Racing, located at 2999 Street Rd, Bensalem, PA 19020
i. Penn National Race Course, located at 777 Hollywood Blvd, Grantville, PA 17028

j. Monmouth Park, located at 175 Oceanport Ave, Oceanport, NJ 07757
k. Meadowlands Racetrack, located at 1 Racetrack Dr, East Rutherford, NJ 07073
l. Saratoga Racecourse, located at 267 Union Ave, Saratoga Springs, NY 12866
m. Belmont Park, located at 2150 Hempstead Turnpike, Elmont, NY 11003

17. In sum, the Property is (1) in an area he regularly visits with his family for shopping (2) just a few minutes from the Atlantic City Expressway and the routes into Philadelphia, (3) in proximity to many places Mr. Maurer visits regularly and will continue to visit regularly, including the Berlin Farmer's Market and several hotels where he has previously stayed and will stay in the future, (4) near many properties regularly inspected by Mr. Maurer for ADA compliance, and (5) on route from his home to Penn National Race Course, Harrah's Philadelphia Racetrack, and Parx Racing.

18. Mr. Maurer is very fond of Popeye's chicken and intends to return to the Property – not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that any return visits are not made in vain.

19. Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have caused him embarrassment, frustration, and endangered his safety at the Property.

20. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

21. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 30

of this complaint.

22. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard, and in full compliance with the ADA.

## COUNT I

**Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.**

23. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

24. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

25. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[5]

26. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

27. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services,

---

[4] 42 U.S.C. § 12101(a)(1)

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

28. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 30 are both technically feasible and readily achievable. Plaintiff's expert has based this judgement on personal knowledge of materials, pricing, labor, and the completion of similar projects in the area. The remaining barriers to access – which are procedural in nature and/or policy based – will need to be monitored into the future to ensure that the current discrimination is ceased and never reinstituted.

29. Each of the following violations listed in Paragraph 30 is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

30. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**Parking and Exterior Accessible Route**

a. The designated accessible parking spaces at the Property are not maintained, contain slopes

[7] 28 CFR § 36.104

beyond the allowable limits, and lack compliant access aisles; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Mr. Maurer with a tipping hazard which could also cause damage to his wheelchair; to avoid these obstacles he parks away from the facility in a flat maintained area, travels around the obstacles, and then through the vehicular area of the lot in order to reach Popeyes.

b. The designated accessible parking at the Property fails to provide a compliant accessible route from the parking area to the entrance; the current leads to an improperly designed curb ramp which protrudes the access aisle, is unsafe for wheelchair users, and impedes the use of a vehicular ramp; violations of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. The lack of an accessible ramp and a compliant curb ramp has impeded Mr. Maurer's travel, the use of his vehicular ramp, and presented him with a tipping hazard.

c. The exterior accessible route throughout the Property is impeded by sloping and cross-sloping beyond the allowable limits and abrupt changes in level; violations of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer has been impeded by the excessive sloping and abrupt changes of level while traveling through the Property – these conditions present a tipping hazard and could damage his wheelchair.

d. The Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles); a violation of the ADAAG and Section 502 of the 2010 ADA Standards. Due to the lack of compliant accessible parking, Mr. Maurer has been forced to park away from Popeyes as detailed above so that he could freely access his vehicle; doing

so and parking without the benefit of an access aisle adds the additional fear of becoming blocked out from his van (or trapped inside) by an adjacent vehicle.

e. The Property fails to provide a compliant route to the adjacent street/sidewalk and/or the public transportation route; the existing route contains excessive sloping and abrupt changes in level. Mr. Maurer is precluded from accessing the Property from these areas due to the lack of an accessible route; a discriminatory omission which limits his options for access and transportation; a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

f. Popeyes provides interior service elements which are mounted beyond the proscribed reach ranges and lacks the requisite number of accessible dining tables; in violation of the ADAAG and Sections 308 and 904 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these interior service elements (tables, countertops, work surfaces, etc.). Due to the lack of accessible tables Mr. Maurer could not dine in comfortable manner.

g. Popeyes fails to provide the requisite number of accessible dining tables that allow for a full approach by wheelchair users; in violation of the ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of fully accessible tables Mr. Maurer could not dine comfortably with his family.

**Restrooms**

h. The restroom within Popeyes is inaccessible to Mr. Maurer as it contains barriers to access including a lack of wheelchair maneuvering space, excessive sloping, improperly placed dispensers, obstructions due to policy failures, and improper door hardware; violations of

the ADAAG and Section 601 of the 2010 ADA Standards. Due to these barriers Mr. Maurer could not freely make use the restroom.

31. The discriminatory violations described in the preceding Paragraph 30 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection and include those personally experienced by Mr. Maurer. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[8]

32. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury, and damage without the immediate relief provided for by the ADA and requested herein.

33. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in

---

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them)

nature.[9]

35. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[10]

36. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[11]

37. Pursuant to 28 CFR § 36.304(a) the Defendants shall remove all architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

38. If the Defendants' facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993[12] then the Defendants' facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

39. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities,

---

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)
[10] 42 U.S.C. § 12181(b)(2)(A)(ii)
[11] 42 U.S.C. § 12181(b)(2)(A)(iii)
[12] as defined by 28 CFR § 36.401(a)(2)

including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendants must meet/exceed to bring the Property into compliance with the ADA.

40. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

41. Although a plaintiff is not required to notify the Defendant of its violation of the ADA nor the ongoing discrimination prior to the filing of an action, Mr. Maurer has expressed to employees at the Property that barriers to access exist thereupon. To that end, he has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, such as this, and pray for the relief contained herein.

[13] 28 CFR § 36.402(a)(2)

42. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

43. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

44. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[14]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

[14] 42 U.S.C. § 12188(b)(2)

c. An Order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

**<u>COUNT II</u>**

**Violation of New Jersey Law**
**Against Discrimination, N.J.S.A. 10:5-1 <u>et</u> <u>seq.</u>**

45. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

46. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[15]

48. As set forth above, the Defendant has violated the LAD – either intentionally or negligently – by denying Mr. Maurer, and all other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49. As a result of the Defendant's actions – the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions – Mr. Maurer has sustained bodily injury in the form of emotional distress, mental anguish, dignitary harm, and

[15] Pursuant to N.J.S.A 10:5-4

humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering the Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 24th day of September 2026,

*/s/ Jon G. Shadinger, Jr.*
Jon G. Shadinger, Jr., Esq.
Shadinger Law, LLC
2220 N East Avenue
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*